Joseph **CITIZEN**, Plaintiff,

v.

**M/V TRITON** and its owners.

No. B–73–CA–303.

United States District Court,
E. D. Texas,
Beaumont Division.

Oct. 8, 1974.

Woodson E. Dryden, Beaumont, Tex., for plaintiff.

George E. Duncan, Walter J. Crawford, Jr., Wells, Duncan, Beard, Greenburg & Hunt, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

### FINDINGS OF FACT

This case has been submitted to the Court for decision upon an agreed stipulation of facts and the briefs of the par-

ties. It involves an injury to the plaintiff longshoreman in the Port of Beaumont while employed by Gulf Stevedore Corporation who had contracted with the defendant vessel owner to perform stevedoring services aboard its vessel, the M/V TRITON, as an independent contractor in the ports of Galveston and Beaumont, Texas. The injury occurred on July 26, 1973, and therefore involves the changes made in the third party rights of the parties by the Longshoremen's & Harbor Workers' Compensation Act Amendments of 1972 which became effective on November 26, 1972.[1]

The M/V TRITON, a 16,000 ton bulk carrier, built in 1972, was under a voyage charter to transport to Ceylon a full cargo of wheat flour in bags, part of which cargo was to be loaded in the Port of Galveston, Texas, and the remainder to be loaded in the Port of Beaumont, Texas. The vessel owners engaged Gulf Stevedore Corporation, hereinafter referred to as "Stevedore," an independent stevedoring contractor, to load the vessel with the flour cargo in both the Ports of Galveston and Beaumont. The vessel arrived at the Port of Galveston, her cargo holds completely empty on July 17, 1973.

The Stevedore employed the gangs of longshoremen which partially loaded the vessel with bags of flour in Galveston during the period July 17–July 25, 1973, but bags of flour were loaded in the No. 4 hold of the vessel where the plaintiff was later injured only during the period July 22–July 25, 1973. The manner and method for loading of the cargo and the working conditions in the cargo holds were determined by the Stevedore in Galveston. Only longshoremen employed by the Stevedore loaded the bags of flour in Galveston and no other persons worked in the No. 4 hold in Galveston, or during the course of the vessel's voyage to Beaumont.

The M/V TRITON departed Galveston, Texas, at 1500 hours on July 25, 1973, and arrived at the Port of Beaumont at 0315 hours on July 26, 1973. The voyage was uneventful, the seas were calm, the weather fine and the visibility good.

After the arrival of the M/V TRITON at Beaumont, the Stevedore employed the gangs of longshoremen which completed loading the vessel with bags of flour during the period July 26–August 3, 1973. No persons other than employees of the Stevedore determined the manner and method for loading of the cargo and the working conditions in all of the cargo holds at Beaumont, including the No. 4 hold.

The plaintiff was injured in the No. 4 hold of the M/V TRITON on July 26, 1973, while working as a member of the gang of longshoremen loading bags of flour into the hatch under the exclusive direction of the Stevedore's gang foreman and walking foreman. The plaintiff's gang and four other gangs of longshoremen in the employ of the Stevedore had commenced loading the vessel at Beaumont at 0700 hours on July 26, 1973.

The flour to be loaded was contained in burlap bags. The bags were loaded on pallets on the dock, and after the loaded pallets were taken into the No. 4 hold by means of the vessel's boom and winches. The plaintiff and other members of his gang would unload them from the pallets and stow them in the hold of the vessel. When the plaintiff's gang descended into Hatch No. 4, it was found that this hold was approximately one-third full with burlap bags of flour, which had been previously loaded at the Port of Galveston by the Stevedore, the plaintiff's employer.

The bags of flour were so loaded and stowed in Galveston by the Stevedore employer of the plaintiff, that there was a mound of bags in the square of the No. 4 hatch and as the bags were not floored off, there were some open spaces between them. These open spaces were

1. Public Law 92–576, 92nd Congress, 2d Session, which amended Title 33 U.S.C.A. Sec. 901 et seq.

open and obvious upon the vessel's arrival in Beaumont and the Stevedore alone made the decision and directed the plaintiff's gang to stow bags of flour on all sides of the square of the hold in order to even out the stow and thus eliminate the mound of bags in the square of the No. 4 hold which had been created by the Stevedore in Galveston. This required the plaintiff and the other longshoremen to walk on top of the mound of bags where there were some open spaces between the bags.

The plaintiff and his gang so loaded bags of flour in the No. 4 hold from 0700 until 1200 hours on July 26, 1973; knocked off one hour for lunch at 1200 hours, resumed loading at 1300 hours and plaintiff was injured at approximately 1450 hours on that date.

At approximately 1435 hours, the plaintiff and his work partner had received a pallet load of bagged flour and had landed it at the inshore forward corner of the square of the hatch only a few feet from the forward bulkhead of the No. 4 hold. The plaintiff and his work partner then removed the bags of flour from this pallet one at a time and stowed them against the forward bulkhead. When there was only one bag of flour left on this pallet, the plaintiff and his work partner each took an end of the bag and commenced to swing it towards the forward bulkhead. While attempting to swing his end of the bag the plaintiff stepped forward and into an open space large enough for his foot to go in between the bags of flour previously loaded in Galveston. Plaintiff stepped into this space when his vision was momentarily obscured by the bag of flour which he was swinging toward the forward bulkhead and injured his back.

The accident occurred after the gang in which the plaintiff was working had been stowing bags in the No. 4 hold for approximately six hours and fifty minutes and after the plaintiff and his work partner had been working in and around the immediate area where he was injured for approximately fifteen minutes.

The open space into which the plaintiff stepped was present when the plaintiff and other longshoremen in his gang commenced work that day at 0700 hours and there was nothing to prevent the plaintiff and the other longshoremen from seeing the condition of the cargo with its open spaces as it existed in the No. 4 hold before he was injured.

During the periods of loading in both Galveston and Beaumont the Stevedore was in sole charge of the loading of the bagged flour in the various hatches of the vessel, and no instructions were given by the owners, officers, agents, employees or charterers of the M/V TRITON with respect to the manner or means of loading or stowing of the vessel in either port.

## CONCLUSIONS OF LAW

These facts present a case of first impression in this Court following the 1972 Amendments which made sweeping changes in the Longshoremen's Act, first, by substantially improving the compensation benefits payable under the Act; and second, in a covered employee's rights against a third party vessel, and in the vessel's indemnity rights against his stevedore employer. These changes were brought about by adding a new subsection (b) to Section 5 of the Act which insofar as this case is concerned reads as follows:

"(b) In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, . . . may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the

vessel except remedies available under this Act." 33 U.S.C.A. § 905(b).

It is clear from this statute that the plaintiff longshoreman in this case is entitled to recover only if he proves that his injury was "caused by the negligence of the vessel." Indeed the plaintiff's complaint recognizes this fact and does not even attempt to assert a claim based on the warranty of the seaworthiness of the vessel under the General Maritime Law.

The plaintiff's argument that, "If the Master of a vessel arrives in a port with an unseaworthy condition aboard the vessel, about which he knows or, with the exercise of reasonable diligence, should have known, constitutes negligence in failing to provide a reasonably safe place to work" follows the line of decisions prior to the 1972 Amendments. Spearman v. Sterling Steamship Co., 171 F.Supp. 287 (U.S.D.C.E.D.Pa., 1959), Nuzzo v. Rederi (2nd Cir. 1961) 304 F. 2d 506 and Strachan Shipping Company v. Alexander (5th Cir. 1962), 311 F.2d 385. For the Court to go along with this argument would, in effect, allow a cause of action based on unseaworthiness. In other words, "unseaworthiness equals negligence." If the defendant could be held liable for the condition of the tow on a breach of duty to provide the plaintiff with a safe place to work under the facts in this case, the 1972 Amendments to the Longshoremen's Compensation Act, 33 U.S.C., Sec. 905(b) would be circumvented and would negate precisely the purpose of the amendment which was to eliminate unseaworthiness as the basis for a cause of action. In view of the 1972 Amendments, the Court must look to the decisions prior to the time of *Sieracki* and *Ryan* to determine negligence on the part of the defendant vessel.

 An excellent treatise with much background on the test of negli-

gence to be used prior to the advent of the unseaworthiness cause of action is 379 F.Supp. 759 (Civ.Action No. 73–1120, Robert H. Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.b.H & Co., K.G. v. Northern Metal Co., and Civ.Action No. 73–2150, Dennis A. Farro v. Eternity Carriers, Inc. v. Northern Metal Co., Eastern District of Pennsylvania, 1974). In these consolidated cases a three-judge district court of the Eastern District of Pennsylvania made a rather exhaustive study of the subject and concluded, "We cannot at this time fashion the outlines of the negligence remedy Congress allowed to be brought against the vessel. This can only be left to future case development. It is clear, however, that Congress decided that the primary duty to provide a safe place to work is on the Stevedore. The manner in which the bags were stowed on the M/V TRITON in Galveston may have been sufficient to render the vessel unseaworthy when it arrived in Beaumont and at the time plaintiff began his work under the *Sieracki* and *Ryan* decisions,[2] but the 1972 Amendments abolished the rationale of that line of decisions insofar as negligence, unseaworthiness and non-delegable duty is concerned. The fact remains that the evidence is not sufficient to so show from a preponderance of the evidence that the defendant vessel acted negligently with respect to the condition of the stow. The duty to discover and remedy a dangerous condition caused by the space between the bags of flour as stowed was clearly the responsibility of the Stevedore which had control of the work being done in the hold both in Galveston and Beaumont. The vessel cannot be negligent for the breach of duty owed by the Stevedore. See Willie Lee Shephard v. S/S Nopal Progress, et al. v. T. Smith and Son, Inc., 497 F.2d 963 (5th Cir. 1974).

2. First announced in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90 L.Ed. 1099, 66 S. Ct. 872 (1948) whose prog ny since has been almost endless.

Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 727 (1956).

■ The injured longshoreman is in the same position he would be in had he been injured in non-maritime employment ashore and his burden of proving negligence is greater than that of a seaman under the Jones Act.[3]

The defendant vessel owner, having violated no duty owing to the plaintiff longshoreman, cannot be found to be negligent and is not liable to the plaintiff. Therefore, the Court finds, concludes and orders that judgment be entered for the defendant with cost of court.

3. For example, the statutory concept of negligence under the Federal Employers' Liability Act, 45 U.S.C.A. Sec. 51 et s:q. and the Jones Act, 46 U.S.C.A. Sec. 688, requires only "even the slightest" negligence to sustain a recovery, Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 511, 77 S.Ct. 457 (1957). Maritime negligence imposes on the vessel owner a non-delegable duty to use reasonable care to furnish a reasonably safe place in which to work, Vickers v. Tumey, 290 F. 2d 426, 432 (5th Cir., 1961) ; while common law negligence embodi:s no comparable non-delegable duty, and neither maritime negligence or common law negligence applies the "negligence however slight" standard of the Federal Employers' Liability Act.