**Donald E. BIRRER, Plaintiff,**

v.

**FLOTA MERCANTE GRANCOLOM-
BIANA, Defendant.**

**Civ. No. 73–75.**

United States District Court,
D. Oregon.

Dec. 13, 1974.

Bernard Jolles, Franklin, Bennett, Ofelt, Des Brisay & Jolles, Portland, Or., for plaintiff.

Erskine B. Wood, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for defendant.

Pozzi, Wilson & Atchison, Portland, Or., amicus curiae on behalf of plaintiff.

Dean D. De Chaine, Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., amicus curiae on behalf of defendant.

Floyd A. Fredrickson, John R. Dudrey, Fredrickson, Tassock, Weisensee, Barton & Cox, Portland, Or., amicus curiae on behalf of Brady-Hamilton Stevedore Company.

Dennis Lindsay, Carl R. Neil, Jerard S. Weigler, Robert E. Babcock, Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland, Or., amicus curiae on behalf of Master Contracting Association of the Pacific Coast, Inc.

Kenneth E. Roberts, Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland Or., amicus curiae on behalf of defendant.

## OPINION

SOLOMON, Judge:

This case is one of a group filed by longshoremen injured while loading or discharging cargo on or from vessels in navigable waters in Oregon.

▮▮▮ All of the accidents occurred after the effective date of the 1972 amendments (Act of Oct. 27, 1972, Public Law 92–576, 86 Stat. 1263) to the Longshoremen's and Harbor Workers' Compensation Act (the LHWA), 33 U. S.C. § 901 et seq. In each case the injured longshoreman seeks the benefits and protection of the Oregon Employers' Liability Act (the OELA), ORS 654.305, 654.315.[1]

In this case, Birrer, a longshoreman, was injured in January, 1973, while he assisted in loading the CIUDAD DE MANTA (the vessel). He filed this action against the shipowner, Flota Mercante Grancolombiana (the defendant). Birrer alleges that he was injured when a ladder he was using to go from one deck to another twisted because it was improperly secured. He admits that the ladder was a straight-type ladder, which the stevedore supplied and the longshoremen secured.

Birrer asserts that he is entitled to recover because the defendant failed to "use every device, care and precaution which it is practicable to use for the protection and safety of life and limb" as required by the OELA. Specifically, he charges that the ship violated the OELA because it could have supplied a jacob's ladder or other rope-type ladder which could not have twisted when he used it, or could have furnished a safe alternative means of ingress and egress to the No. 2 hatch.

The defendant contends that the OELA standard of care does not apply to negligence actions which arise under Section 905(b) of the LHWA. That section authorizes an injured longshoreman (or his survivors) to bring an action for negligence against the owner of a ship on which the longshoreman was injured. The defendant contends that the proper standard of care in a § 905(b) negligence action is the traditional common law standard of due care.

▮▮▮ The OELA standard is higher than the traditional common law standard. The issue before this Court is whether a longshoreman in a § 905(b) negligence action against a shipowner can incorporate the higher OELA standard. This depends on whether the standard of care in § 905(b) negligence actions must be nationally uniform. If so, it would preclude the application of incompatible state standards.

1. "654.305. *Protection and safety of persons in hazardous employment generally.* Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

"654.315. *Persons in charge of work to see that ORS 654.305 to 654.335 is complied with.* The owners, contractors, sub-

contractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.335 are complied with."

The OELA was adopted by initiative in 1910 to give injured workers a better opportunity for just recovery against their employers. Under the OELA, if an employer provides workmen's compensation coverage, he is immune from tort actions by his employees for on-the-job injuries. If he fails to provide workmen's compensation coverage, employees can bring tort actions against him on a higher standard of care and the employer cannot assert the defenses of contributory negligence, assumption of risk or negligence of a fellow servant.

█ In my opinion, both general maritime law and § 905(b) require adherence to a uniform standard of care in § 905(b) actions and the higher OELA standard is inapplicable to such actions.

The leading case on the general maritime law requirement of uniform maritime laws is Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). The Court there held that the Constitution calls for federal supremacy in maritime affairs through a system of uniform federal maritime laws. In support of that conclusion the Court quoted Mr. Justice Bradley in The Lottawanna, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1875):

". . . [T]he Constitution [in giving admiralty and maritime jurisdiction to the federal courts] must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been intended to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." 244 U.S. at 215, 37 S.Ct. at 528.

█ Under this principle of uniformity, admiralty courts will not enforce any state law which ". . . contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Jensen, supra* 244 U.S. at 216, 37 S.Ct. at 529. Admiralty courts have followed the general maritime uniformity principle, except in certain wrongful death cases.

In Robins Drydock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L. Ed. 372 (1925), a ship repair worker was injured when a scaffold broke and he fell into the hold. A state statute placed upon employers a high duty of care with respect to scaffolds. The Supreme Court held that the state standard was not applicable:

"The alleged tort was maritime, suffered by one doing repair work on board a completed vessel . . . The rights and liabilities of the parties arose out of and depended upon the general maritime law and could not be enlarged or impaired by the state statute. [Citations omitted] They would not have been different if the accident had occurred at San Francisco." 266 U.S. at 457, 45 S.Ct. at 158.

*See* Branch v. Schumann, 445 F.2d 175, 178 (5th Cir. 1971).

The same principle was applied in Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Hawn, a maritime worker, was injured aboard a ship on navigable waters in Pennsylvania. The shipowner contended that under Pennslyvania law Hawn's contributory negligence barred recovery. In rejecting that contention, the Supreme Court said that Hawn's rights were based on uniform maritime law:

". . . [T]he basis of Hawn's action is a maritime tort, a type of action which the Constitution has placed under national power to control in 'its substantive as well as its procedural features . . .' . . . His right of recovery for unseaworthiness and negligence is rooted in federal maritime law." 346 U.S. at 409, 94 S.Ct. at 205.

In spite of these holdings, Birrer argues that Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960), supports his contention that general maritime law allows application of the OELA standard to maritime injuries. In *Hess* the Supreme Court held that the OELA's high standard was applicable in a wrongful death action brought by the legal representative of a deceased maritime worker.

In *Hess* an employee of an independent contractor, doing repair work at

the Bonneville Dam on the Columbia River, drowned when his vessel capsized in the turbulent water below the spillway. His survivors sued the Federal Government, owner and operator of Bonneville Dam, under the Federal Tort Claims Act. The plaintiff invoked the OELA, seeking to impose on the Government the standard of care required by the "every device, care and precaution" provision of that statute. The Oregon District Court ruled that, under *Jensen, supra,* the OELA standard would infringe the uniformity requirement in the substantive law applicable to maritime torts. The Ninth Circuit affirmed. 259 F.2d 285 (1958). The Supreme Court reversed, holding that state standards were applicable in actions brought for the wrongful death of maritime workers.

This decision was the culmination of a series of cases flowing from the Court's unfortunate decision in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). There the Court held that general maritime law did not include a right of recovery for death. That decision meant that a maritime worker could recover under general maritime law for nonfatal injury, but his survivors could not recover if the injuries resulted in his death. To resolve this anomoly, the admiralty courts "adopted" state wrongful death statutes for deaths resulting from torts committed in state territorial waters.[2] Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 66 L.Ed. 210 (1921).

In 1959, in The Tungus v. Skovgaard, 358 U.S. 588, 592, 79 S.Ct. 503, 3 L.Ed. 2d 524, the Court held that if a plaintiff relied on a state-created death remedy, the federal court must apply the state law in toto, with its limitations as well as its benefits. There the Court held that unseaworthiness as a basis for recovery under a state death statute must be determined by state law. Four Justices dissented because they thought the

substantive right to recover for wrongful maritime death should be controlled by uniform federal maritime law, not state law.

One year later the Court in *Hess* held that the high OELA standard of care could be applied in a maritime wrongful death action. The four Justices who dissented in *The Tungus* joined, "solely under compulsion of the Court's ruling in *The Tungus*", 361 U.S. at 321, 80 S. Ct. at 347, with one other Justice to create a majority in *Hess*.

In 1970, in Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970), the Court ended the confusion caused by the application of state laws in maritime death cases. The Court, in overruling *The Harrisburg,* recognized a general maritime right to recover for wrongful death and ended reliance on state death laws. The Court set forth the controlling principle of uniformity:

"Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts. E. g., Hess v. United States, 361 U.S. 314, [80 S.Ct. 341, 4 L.Ed.2d 305] (1960); Goett v. Union Carbide Corp., 361 U.S. 340, [80 S.Ct. 357, 4 L.Ed.2d 341] (1960). Such uniformity not only will further the concerns of both of the 1920 Acts but also will give effect to the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.' The Lottawanna, 21 Wall. 558, 575 [22 L.Ed. 654] (1875)." 398 U.S. at 401, 90 S.Ct. at 1788.

The *Moragne* Court reaffirmed the principle that general maritime law requires a uniform maritime negligence

2. The Death on the High Seas Act, 46 U.S. C. §§ 761–768, provided a right of recovery for death on the high seas, i.e., beyond state territorial waters.

standard of care, a principle which had been weakened by cases flowing from the discredited doctrine of *The Harrisburg*.

A uniform negligence standard is also required by § 905(b), the statutory authorization for negligence actions by longshoremen against shipowners.

Historically, a longshoreman could maintain an action for negligence against both his employer and the owner of the vessel on which he was injured. In 1927, Congress passed the Longshoremen's and Harbor Workers' Act which set up workmen's compensation benefits for longshoremen. Section 905 of that Act provided that when an employer paid workmen's compensation benefits, he had no other liability to the employee; the benefits barred the employee from bringing a tort action against the employer. The employee could, however, sue a shipowner for negligence.

In The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903), the Court held that a shipowner was liable for ". . . injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." *See also* Mahnich v. Southern S. S. Co., 321 U.S. 96, 99, 64 S.Ct. 455, 88 L.Ed. 561 (1944). This warranty of seaworthiness imposed almost absolute liability on shipowners for injuries to seamen.

In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the warranty of seaworthiness was extended to longshoremen because the loading and unloading of vessels had traditionally been done by seamen.[3] After 1946, therefore, a longshoreman could bring a maritime tort action against a shipowner for both negligence and unseaworthiness. The unseaworthiness cause of action, which did not require a showing of fault, eclipsed the negligence standard and was often the sole basis

used by longshoremen against shipowners. In Petterson v. Alaska Steamship Co., 205 F.2d 478 (9th Cir. 1953), aff'd 347 U.S. 396, 74 S.Ct. 396, 98 L.Ed. 798 (1954), a shipowner was held liable for unseaworthiness when a block supplied by the stevedore broke and injured a longshoreman working on board the vessel.

In Beeler v. Foss Launch & Tug Co. and Alaska Aggregate Corp., 336 F.2d 108 (9th Cir. 1964), cert. denied, 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965), the vessel was found unseaworthy when a longshoreman was injured after two fellow longshoremen failed to hold the ladder he was using. And in Blassingill v. Waterman Steamship Corp., 336 F.2d 367 (9th Cir. 1964), a longshoreman was struck and injured when a bale of burlap fell from the sling being used to unload the vessel. The court held that the vessel would be unseaworthy if the evidence showed that the stevedore had adopted a method of work which created an unreasonable risk of danger to its own employees.

In these and other cases, longshoremen often brought actions against shipowners for unseaworthiness because of conditions for which their employers, the stevedoring companies, or fellow workers were responsible. As a result of these conditions, shipowners, to reduce their liability, filed indemnity actions against the stevedores. In States S. S. Co. v. Rothschild International Stevedoring Co., 205 F.2d 253 (9th Cir. 1953), the stevedore was required to indemnify the shipowner for the death of a longshoreman caused by the improper operation of a winch by a fellow longshoreman.

The Supreme Court approved these indemnity actions in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). There the shipowner was granted indemnity against the stevedore because the stevedore breached its war-

3. A seaman could also bring a negligence action against his employer under the Jones Act, 46 U.S.C. § 668.

ranty of workmanlike performance. The stevedoring companies, which were immune under the LHWA of 1927 from direct tort actions by their longshoremen, could now be held liable indirectly. Shipowners were indemnified even when the stevedores used equipment furnished by the vessel or when the vessel itself was defective. In Lamar v. Admiral Shipping Corp., 476 F.2d 300 (5th Cir. 1973), the vessel was granted indemnity against the stevedore whose superintendent erred in concluding that the vessel's bowed gangway was safe.

After *Ryan*, stevedores became increasingly dissatisfied. Their immunity under the LHWA of 1927 from tort actions by their employees had been undermined.

The longshoremen were also dissatisfied because of the low benefits under the 1927 Act. Since 1961, stevedores successfully blocked all attempts to increase these benefits. The stevedores recognized that these benefits were inadequate but they contended that the expanded rights of longshoremen under the seaworthiness doctrine and the added liability of the stevedores to the shipowners prevented them from paying adequate benefits.

In 1972, Congress acted to resolve these and other problems by amending the LHWA. Benefits for the longshoremen were increased dramatically.[4]

The shipowners and stevedores, on the other hand, were given some protection against tort actions by longshoremen by § 905(b).[5] That section eliminated unseaworthiness as a basis for recovery in an action by a longshoreman against a shipowner. An injured longshoreman (or his survivors) may, however, bring an action against a shipowner (with certain minor exceptions) for injuries caused by the negligence of the shipowner. Whether the standard of care in these negligence actions must be nationally uniform is the principal issue in this case.

Senate and House reports show that Congress intended that the provisions of § 905(b) negligence actions shall be determined as federal law and shall be applied uniformly, to the exclusion of varying state statutes. Those reports contain the following statement:

". . . [T]he Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which

---

4. The maximum weekly benefit was immediately raised from $70 to $167, and a schedule provided for subsequent raises.

5. "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permit-

ted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

**1112**

precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable." S. Rep. No. 1125, 92d Cong., 2d Sess. 102; H.R.Rep. No. 1441, 92d Cong., 2d Sess. 8 (1972); 1972 U.S.Code Cong. & Admin.News 4698.

Birrer contends that any national standard of care for § 905(b) actions is merely a minimum standard and that a state is free to establish a higher standard. He relies on Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973). There the Court held that Florida could apply its Oil Spill Prevention and Pollution Control Act, Fla.Laws 1970, c. 70–244, although its requirements were stricter than those of the Federal Water Quality Improvement Act of 1970, 33 U.S.C. § 1161 et seq.

The *Askew* Court found that the Federal Act did not preclude, but in fact specifically allowed, state regulation. The Court also decided that the maritime uniformity principle of *Jensen, supra*, did not bar Florida's strict standard because the Florida Act applied to shoreside injuries rather than injuries involving traditional maritime activity.

Here, § 905(b) precludes a state standard that is stricter than the national standard.

" . . . [T]he Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness." S.Rep., *supra* at 100; H.R.Rep., *supra* at 6.

Section 905(b)'s limitation on actions against shipowners was a deliberate compromise between the longshoremen, who wanted no limits on tort actions, and the shipowners, who wanted complete immunity from such actions. A standard stricter than the national standard would subvert Congress' intention to limit tort recoveries against shipowners.

Counsel for the defendant asserts that the standard of care contemplated by § 905(b) is the same as the traditional land-based negligence standard. I agree. For an excellent discussion of this issue, see the opinion of Judge William H. Orrick, Jr., in Ramirez v. Toko Kaium K.K., 385 F.Supp. 644 (N.D. Cal.1974).

I hold that both general maritime law and § 905(b) require a uniform federal standard of care for negligence actions under § 905(b) and that the strict OELA standard is inapplicable in these actions.