**Milo TEOFILOVICH, Plaintiff,**

v.

**d'AMICO MEDITERRANEAN/PACIFIC LINE, Defendant.**

**No. CV 75–1269–JWC.**

United States District Court, C. D. California.

June 11, 1976.

Joe Ling, of Ackerman, Ling & Russell, Long Beach, Cal., for plaintiff.

Ralph D. Kirwan and Michael D. Dempsey, of Lillick McHose & Charles, Los Angeles, Cal., for defendant.

Richard M. Secia, of Pinney & Tighe, North Hollywood, Cal., for plaintiff intervenor Hartford Acc. & Indemnity Co.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

CURTIS, District Judge.

This cause came on regularly for trial February 24, 1976 before the Honorable Jesse W. Curtis, United States District Judge presiding. Joe Ling of Ackerman, Ling & Russell appearing for plaintiff; Richard M. Secia of Pinney and Tighe appearing for Hartford Accident and Indemnity Company, plaintiff in intervention, and Ralph D. Kirwan and Michael D. Dempsey of Lillick, McHose & Charles appearing for defendant.

Evidence, both oral and documentary, having been admitted and having heard the evidence and arguments of counsel, having considered the briefs on file and having granted the defendant's motion for directed verdict, the court now finds the facts and sets forth the conclusions of law as follows:

Plaintiff sued d'Amico Societa Di Navigazione S.p.A. ("d'Amico") for damages because of injuries allegedly suffered while working as a longshoreman on board defendant's vessel Lorenzo d'Amico on October 10, 1974. Plaintiff is a California resident and d'Amico is an Italian resident so this court has jurisdiction by virtue of the diversity of citizenship of the parties. 28 U.S.C. § 1332. Hartford Accident and Indemnity Company, the compensation carrier for plaintiff's stevedore company employer, intervened to recover compensation benefits it paid plaintiff as a result of his disability. See the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 901, et seq.

At the close of plaintiff's evidence, defendant moved for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure upon the ground that the evi-

dence, viewed in the light most favorable to plaintiff, did not entitle him to relief.

Plaintiff has eight years experience in the American merchant marine and more than twenty years experience as a longshoreman. During his time on the waterfront, he has assisted in the loading and unloading of cargo at more than one hundred vessels, including vessels owned by d'Amico.

On October 10, 1974, the Lorenzo d'Amico was moored at Berth 223, Terminal Island. Plaintiff and other longshoremen employed by Marine Terminals Corporation were dispatched from the union hall to the dock along side the vessel where they were met by the ship foreman, a permanent employee of the stevedore company. The ship foreman divided the men into smaller groups of ten, which are called gangs, and assigned each gang to work a separate hatch on board the vessel. Plaintiff and the members of his gang were assigned to work Hatch No. 4 under the supervision of the hatch boss, also a permanent employee of the stevedore company. Plaintiff and the other longshoremen in his gang reached Hatch No. 4 at approximately 8:00 o'clock A.M. The cargo in that hatch was stowed in the after portion. At the forward end of the stow were four or five rows of wooden crates, each approximately two feet wide and three feet long, containing small pieces of Italian marble. These crates were stowed three tiers high, and each tier was separated by dunnage from the one beneath it. Dunnage is a maritime term describing slats of wood which are placed on or between cargo to separate it from other cargo. The dunnage provides for greater stability of the load during ocean voyages and tends to facilitate discharge by providing small spaces between the cargo.

Directly behind this crated marble were crated slabs of thin marble, approximately three feet wide and four to six feet tall. These slabs of marble were stowed tightly together in upright positions. The crates of marble pieces and the slabs of marble formed a relatively flat surface upon which longshoremen could walk as they moved about the stow. On top of the stow was another smaller stow of boxes containing Italian shoes.

When plaintiff, his fellow longshoremen and the stevedore supervisors entered the hatch they observed that several crates containing marble pieces had fallen down out of the stow. Plaintiff and the other longshoremen picked up these crates and cleaned up some of the pieces of marble that had spilled out. Upon the direction of the hatch boss, the longshoremen then began discharging the crates of marble from the front of the stow. This discharge operation went on most of the day. By approximately 4:00 o'clock P.M., the longshoremen, by means of a forklift, had discharged most of the boxes from the center of the stow. They discharged the boxes in such a way that they formed "stairs" in the front of the stow leading up to the stow of slabs of marble. By stepping from one box to the next the longshoremen, including plaintiff, were able to reach the boxes of Italian shoes stowed on top of the upright slabs of marble.

At approximately 4:00 o'clock P.M., shortly before plaintiff's accident occurred, plaintiff and other longshoremen were working on top of the stow. The plaintiff then decided to climb down off the stow to perform some work in the square of the hatch. He proceeded forward across the top of the stow, then started to climb down by stepping from one crate to another which formed the "stairs." He stepped first on one crate and then on a second crate. The second crate teetered and he fell approximately six feet to the deck, injuring his shoulder. Plaintiff was helped to his feet by his work partner and the two men inspected the crate which had teetered. Plaintiff testified that the strips of dunnage beneath the crate were parallel to each other, but so close together that the dunnage, instead of acting as a stabilizer under the crate, acted as an axle and caused the crate to tilt.

Plaintiff admitted that although he and the nine other longshoremen in his gang had worked in the hatch nearly the entire

shift from 8:00 o'clock A.M. to 4:00 o'clock P.M., neither he nor anyone else detected this alignment of the dunnage. Plaintiff also admitted that the crate which tilted had been two or three rows deep in the stow of cargo. Plaintiff admitted that he did not see anything unusual about the crate moments before he stepped on it, that the work area was under the exclusive control of the longshoremen and had been since 8:00 A.M., that no vessel officer or crewman was seen in the hatch all day, and that the vessel officers and crew are not allowed in the hatch during loading or discharge except under exceptional circumstances. Plaintiff did not know whether the dunnage was improperly aligned before the longshoremen began working the stow in Hatch No. 4, or whether the alignment was changed by their work with a forklift during discharge.

Plaintiff offered no further proof and rested his case. Defendant moved for a directed verdict. In opposition to defendant's motion, plaintiff argued that the vessel owed a non-delegable duty to inspect the work performed by the loading stevedore, an independent contractor employed by d'Amico to load this cargo in a foreign port. Plaintiff also argued that the discharge of cargo from a merchant vessel involved a peculiar risk of harm to a longshoreman and that the vessel is subject to liability for bodily harm caused to plaintiff by the failure of the stevedore company to take special precautions to avoid bodily harm, unless the vessel has taken reasonable precautions itself to avoid such risk. These arguments are embodied in the Restatement (Second) of Torts sections 413 and 416.

In support of his argument that sections 413 and 416 apply 'to a maritime cause of action, plaintiff relied upon the recent California state court decision in *Johnson v. Canadian Transportation Company, Ltd.,* 54 Cal.App.3d 827, 127 Cal.Rptr. 72 (1976). There, the California District Court of Appeal held that the trial court erred in granting defendant shipowner's motion for summary judgment on the grounds that the trial court should have applied those sec-

tions of the Restatement to lawsuits brought under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act. This court believes the *Johnson* decision is at odds with the congressional intent behind the 1972 Amendments and conflicts with the many post Amendment decisions which have become a part of the Federal Maritime Law.

It is well settled that federal law governs lawsuits between an injured longshoreman and a shipowner. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409–10, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Federal law is set forth in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* The Act first became law in 1927. It required stevedore companies to make compensation payments and to provide medical benefits for the disability or death of longshoremen if the disability or death resulted from injury occurring upon navigable waters of the United States. In addition to receiving compensation benefits from his employer, the stevedore company, an injured longshoreman was permitted to sue the owner of a vessel on which he was injured for negligence and breach of the warranty of seaworthiness. *Seas Shipping Co., Inc. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Under the warranty of seaworthiness, shipowners were held vicariously liable for injuries caused by unseaworthy conditions created by the negligence of an independent contractor stevedore company. In turn, the shipowner was permitted to recover indemnity from the stevedore. *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Italia Societa Per Azioni Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). Congress changed this when it amended the Act in 1972. The shipowner no longer is vicariously liable for the negligence of the stevedore company and is prohibited from suing the stevedore for indemnity. 33 U.S.C. § 905(b). However, sections 413 and 416 of the Restatement would hold the shipowner vicariously liable for the negligence of the stevedore. This would do violence to the letter and

policy of 33 U.S.C. § 905(b). This court would err if it applied those sections of the Restatement to hold the shipowner vicariously liable for the negligence of plaintiff's stevedore company employer.

Judicial construction of the amendments is to be on a uniform national basis as required by the Constitution. The courts have repeatedly held that state statutes and state common law are not applicable in maritime personal injury cases. *Robins Dry Dock & Repair Co. v. Dahl,* 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372 (1925); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). For a thorough discussion of the uniformity principal under the 1972 Amendments, see *Birrer v. Flota Mercante Grancolombiana,* 386 F.Supp. 1105 (D.Or.1974).

With this background in mind, the court now turns to plaintiffs' argument, based on the *Johnson* decision, that sections 413 and 416 apply to this action.

Section 413 is entitled "Duty to Provide for Taking of Precaution Against Dangers Involved in Work Entrusted to Contractors." It provides that:

> "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Comment (f) to section 413 emphasizes that ". . . the extent of the employer's knowledge and experience in the field of work to be done is to be taken-into account . . . .." The courts have long recognized that stevedore companies are expert in loading and discharging vessels but that shipowners are not. For example, in *Judith*

*Ann Liberian Transport Corp. v. Crawford,* 399 F.2d 924 (9th Cir. 1968), the court states that "[s]tevedores are the acknowledged experts in this field. It would hardly serve to minimize accidents to require that they be replaced by inexperienced crew members . . . .." This is why the courts created the right to indemnity in the first place, and also why Congress gave the shipowner immunity from vicarious liability for the negligence of the stevedore when it took away the shipowner's right to indemnity.

Section 416 is entitled "Work Dangerous in Absence of Special Precautions" and provides that:

> "One who employs an independent contractor to do work which the employer should recognize is likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

The introductory note to section 416 explains that "[t]he rules stated in the following §§ 416–429 unlike those stated in the preceding §§ 410–415, do not rest upon any personal negligence of the employer. They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor . . . . The statement commonly made in such cases is that the employer is under a duty which it is not free to delegate to the contractor. Such a 'non-delegable duty' requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted."

In its legislative history, Congress ". . . rejected the thesis that a vessel should be liable without regard to its fault for inju-

ries sustained by employees covered under this Act while working on board the vessel." 3 U.S.Code Cong. and Admin.News, p. 4702 (1972). Congress pointed out that "[t]he purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness', 'non-delegable duties', or the like . . . [and] a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act [citations] for the manner or method in which stevedores or employees of stevedores subject to this Act perform their work [citations] for gear or equipment of stevedores or employees of stevedores subject to this Act whether used aboard ship, or ashore [citations] . . . ." *Id.* at 4703. By this, Congress specifically excluded a rule of vicarious liability, specifically excluded a rule of liability without fault and specifically excluded the concept of a non-delegable duty, all of which are the express and explicit result of section 416.

The policy behind the reparation provision of section 416 is expressed in Comment (c) to that section:

"This Section deals with the liability of one who employs a contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions. In such case the contractor who is employed to take precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failure to take reasonably adequate precautions may bring upon him."

33 U.S.C. § 905(b) prohibits the shipowner from seeking indemnity from the stevedore. Thus, the shipowner is denied the basic reparation contemplated by section 416.

Dean Prosser discusses at length the theory and policy underlying the imposition of liability upon an employer for the torts of an independent contractor:

"It has been contended that the enterprise is still the employer's since he remains the person primarily to be benefitted by it; that he selects the contractor, and is free to insist upon one who is financially responsible, *and to demand indemnity from him,* and that the insurance necessary to distribute the risk is properly a cost of his business. Upon this basis, the prediction has been made that ultimately the 'general rule' will be that *the employer is liable for the negligence of an independent contractor,* and that he will be excused only in a limited group of cases where he is not in a position to select a responsible contractor, or the risk of any harm to others from the enterprise is obviously slight." Prosser, *Law of Torts,* Section 71 (4th Ed. 1971). (emphasis added)

The *Johnson* court complained that it had not been cited to any federal law holding that sections 413 and 416 did "not apply as a part of the common law of negligence under the 'new' Act." As shown above and below, substantial law holds the sections inapplicable. The *Johnson* court went on to state that "[s]ections 413 and 416 are not a statement of legal principles unique to California or any other particular state, but are statements of common law principles recognized generally." Shipowner's counsel in the *Johnson* case conceded that the court was to look only to "common law concepts of negligence." This apparently implied to the court, and was taken by the court to mean, that the legislative history and the relationship between shipowner and stevedore called for application of every common law negligence principle found in any state. That is not correct.

The legislative history makes plain that the peculiar relationships between shipowner and stevedore preclude application of sections 413 and 416. As will be shown below, the standard of care under the 1972 addition to the Longshoremen's

and Harbor Workers' Compensation Act is *federal maritime* common law. The *Johnson* court's statement that "[s]ections 413 and 416 are not a statement of legal principles unique to California or any other particular state, but are statements of common law principles recognized generally", may or may not be correct. This court has not surveyed the case law of the individual fifty states. Regardless of how many of those states apply sections 413 and 416, they cannot apply to maritime causes. Ample legislative history indicates that the sections do not apply. In addition to that legislative history, there is substantial maritime common law defining the shipowner's standard of care under a negligence concept and denying attempts by injured longshoremen to hold a shipowner liable for negligent acts of longshoremen. Before the 1972 addition of 33 U.S.C. § 905(b), shipowners were not liable for negligent acts of longshoremen at all.

There always has been a maritime negligence standard, though it usually was overshadowed by the warranty of seaworthiness. The most important pre-amendment discussion of the shipowners' standard of care under a negligence concept was by Judge Mathes of this court in *Hugev v. Dampskisaktieselskabet International*, 170 F.Supp. 601 (S.D.Cal.1959), *aff'd*, 274 F.2d 875 (9th Cir. 1960). The court pointed out that "being a mass of plates, pipes, wires, beams and various mechanisms, each to some degree vulnerable to the elements, it would be much too much to expect a cargo vessel to arrive in port with all equipment, appliances and facilities in a full seaworthy condition. . . . It is reasonable to expect, then, that many things may be wrong with a freighter and her equipment and appliances when she arrives in port; that she may well be a place of danger even as she docks. And all of these lurking dangers may be due entirely to the hazards of a ship's service. The stevedoring contractor knows that the ship has been at sea; that she may be in many respects dangerous to the life and limb of an unskilled person; that if a condition is found which is unsafe for the professional longshoreman, as a rule

the contractor can remedy it at the expense of the shipowner; that if the stevedoring operations are thereby delayed, the shipowner normally must pay for standby time. Stevedoring contractors hold themselves out as being trained and equipped to cope with these conditions and these dangers." *Id.* at 610.

In part because of this experience, the court held that the shipowner owes to those who come on board to work cargo the following duty of care:

"(1) to exercise ordinary care under the circumstances to place the ship on which the stevedoring work is to be done, and the equipment and appliances aboard ship, in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care under the circumstances to load or discharge the cargo, as the case may be, in a workmanlike manner and with reasonable safety to persons and property; and

"(2) to give the stevedoring contractor reasonable warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring company in the performance of the stevedoring work aboard the ship, if the shipowner actually knows or, in the exercise of ordinary care under the circumstances, should know of the existence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring contract." *Id.* at 610–11.

Courts which have considered the shipowner's standard of care under the 1972 addition of 33 U.S.C. § 905(b), have applied the *Hugev* language. The shipowner's standard of care under the negligence concept has always been the same. The change in the statute eliminated the standard of care under the warranty of seawor-

thiness. Under the negligence concept, the shipowner never has been liable for the wrongs of the stevedore. *See, e. g., Titus v. The Santorini,* 258 F.2d 352 (9th Cir. 1958) ("but if the causation of the break was in this third category, negligence at the moment of a fellow longshoreman, the ship would not be liable.") *Id.* at 353; *Billeci v. United States,* 298 F.2d 703 (9th Cir. 1962) (court denied liability where "libelant's injuries were directly and solely caused by a fellow longshoreman's negligent operation of the winch.") *Id.* at 707; *Tim v. American President Lines, Ltd.,* 409 F.2d 385 (9th Cir. 1969).

There also are several post-amendment cases holding that the principles of sections 413 and 416 do not apply.

In *Bess v. Agromar Line,* 518 F.2d 738 (4th Cir. 1975), an injured longshoreman brought a suit in admiralty seeking to recover damages for injuries suffered while loading defendant's vessel. The bales to be stowed were not of uniform size so the top surface of each tier was uneven. Plaintiff claimed that he asked his employer, the stevedoring company, to provide walking boards so the tiers could be covered thereby providing a better surface upon which to walk, and upon which to stack the next tier. No dunnage was supplied and Bess was injured as a proximate result of the uneven surface. He claimed that the shipowner was negligent in failing to provide a safe place for the longshoremen to work and in failing to provide dunnage. The trial court found against him and he appealed. As part of its discussion of the issues on appeal, the United States Court of Appeals held that the shipowner does not have a non-delegable duty to provide a safe place to work and that a non-delegable duty would go beyond the extent of the remedy envisioned by Congress in amending the Longshoremen's and Harbor Workers' Compensation Act in 1972. *Id.* at 742.

In *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), the court found that negligence of some of plaintiff's fellow longshore employees proximately contributed to his injury and held that

"none of *their* negligence can be the basis for imposing liability on an owner *pro hac vice.*" *Id.* at 41. (emphasis added) In construing 33 U.S.C. § 905(b), the court also held that "the vessel, even a vessel which is an employer under the Act, is relieved of liability for negligence of persons engaged in providing stevedoring services, but is not relieved of liability for its own 'owner' occasioned negligence." *Id.* at 43.

In *Hite v. Maritime Overseas Corporation,* 375 F.Supp. 233 (E.D.Tex. 1974), defendant shipowner moved to strike those portions of the plaintiff's complaint which predicated the shipowner's liability upon violation of various safety and health regulations. The regulations placed the burden of enforcement on the contractor. The court held that plaintiff was not entitled to assert a negligence claim against the shipowner based on a violation of these regulations because "the legislative history to [33 U.S.C. § 905(b)] clearly demonstrates that Congress intended that the shipowner would not be held liable for claims predicated upon the negligence of the business invitee's employer or his co-workers." *Id.* at 237. In a later opinion in the same case reported at 380 F.Supp. 222 (E.D.Tex.1974), the court set down an extended discussion of the shipowner's standard of care. The standard, explained in detail at 380 F.Supp. 227, n. 10, excludes any application of Restatement sections 413 and 416 just as did the court's explicit language in its earlier opinion.

In *Citizen v. M/V Triton,* 384 F.Supp. 198 (E.D.Tex.1974), the court held that "the vessel cannot be negligent for the breach of duty owed by the Stevedore." *Id.* at 201. To do so, the court noted, would be to circumvent and "negate precisely the purpose of the amendment which was to eliminate unseaworthiness as the basis for a cause of action." *Ibid.*

In *Ramirez & Guerrero v. Toko Kaiun KK,* 385 F.Supp. 644 (N.D.Cal.1974), plaintiff argued only one theory upon which liability could be found on the part of the ship rather than the stevedoring company which employed him to assist in discharging

an allegedly defectively stowed cargo. The plaintiff's theory was that the vessel owed a non-delegable duty to provide a reasonably safe place to work. The court rejected this argument and entered judgment for the shipowner, holding that "to adopt the non-delegable duty proposed by plaintiff would be to go beyond the extent of the remedy envisioned by Congress and by thus increasing the longshoreman's remedy upset the careful balance of interests established in this legislation. The primary responsibility for the safety of the longshoreman lies with the stevedoring company. It is in the position best to provide for the safe unloading of the cargo. The stevedoring company is hired for its expertise in handling cargo safely and its personnel make all of the decisions as to how best to conduct the unloading." *Id.* at 653.

In *Birrer v. Flota Mercante Grancolombiana*, 386 F.Supp. 1105 (D.Or.1974), the plaintiff longshoreman attempted to impose on the vessel the standard of care set down by the Oregon Employers' Liability Act. This is substantially the same standard of care as found in sections 413 and 416. The court rejected plaintiff's attempt to impose the stricter standard of the Oregon Employers' Liability Act and adopted the standard set down in *Ramirez & Guerrero v. Toko Kaium KK, supra.*

In *Slaughter v. S.S. Ronde*, 390 F.Supp. 637 (S.D.Ga.1974), *aff'd*, 509 F.2d 973 (5th Cir. 1974), the court was equally explicit and stated that "under the amended Act, a longshoreman can no longer recover against the ship by reason of negligence of a stevedoring contractor and methods of loading or unloading which render the ship unseaworthy." *Id.* at 640. The court also noted that "it has also been held that 'The physical handling of an ordinary bale or bundle is the clearest example of a detail within the special competence and peculiar responsibility of the stevedoring contractor' and that such is 'clearly . . . not the province or responsibility of the ship.'" *Id.* at 645.

Accordingly, the concept of non-delegable duty set forth in section 416 of the Restatement is repugnant to the legislative scheme embodied in the 1972 Amendments and to the uniformity required under the Federal Maritime Law. Indeed, to impose upon a shipowner a non-delegable duty to inspect or correct the work of an independent contractor would reimpose upon the shipowner a type of strict liability which Congress sought to abolish in the 1972 Amendments. In light of the clear congressional intention behind the 1972 Amendments, this court finds that the *Johnson* decision is incorrect and in conflict with established Federal Maritime Law.

In light of the foregoing discussion, this court finds that plaintiff has failed to carry his burden of proof in proving that the vessel caused, actually knew of, in the exercise of reasonable care should have known of, or had any responsibility for, the misalignment of the dunnage. Not only has plaintiff failed to introduce any evidence that the vessel officers had a duty to inspect minute details of a stow placed in the vessel by a stevedore more expert than they, but he failed to prove that the defect in the dunnage existed before the vessel turned control of Hatch No. 4 over to the stevedore company. Since plaintiff has failed to prove that the vessel officers knew of the existence of the misaligned dunnage, or had a duty to inspect for this condition, the court finds that there is no showing of vessel negligence.

For the foregoing reasons, defendant's motion for a directed verdict at the close of plaintiff's case is granted and judgment shall be entered in favor of defendant and against plaintiff. Defendant shall have costs.