Roy **BRADLEY**, Appellant,

v.

**DELPH NOR–TEX HIDE CO., Inc., et al.,**
Appellees.

No. 16918.

Court of Civil Appeals of Texas.

Fort Worth.

April 26, 1968.

Rehearing Denied May 31, 1968.

where no place of payment is specified, * * * is a material alteration."

**482**

Garrett, Garrett & Callaway, and Rufus Garrett, Jr., Fort Worth, for appellant.

Brown, Day & Crowley, and M. Hendicks Brown, Fort Worth, for appellee Delph Nor-Tex Hide Co., Inc.

Shannon, Gracey, Wright, Ratliff & Miller, Roy Hudspeth and Kleber C. Miller, Fort Worth, for appellees P. D. Henry and C. S. Elliott, d/b/a Clark & Henry.

OPINION

MASSEY, Chief Justice.

On the theory that the doctrine of *volenti non fit injuria* (meaning he who consents can receive no injury) the trial court withdrew from the jury the suit of plaintiff Roy Bradley against defendants Delph Nor-Tex Hide Company, Inc., C. S. Elliott, and P. D. Henry and rendered a take nothing judgment as applied to the action. From said judgment the plaintiff appealed.

Affirmed.

In January of 1966, plaintiff stepped or fell into a pit or opening in the floor of a building belonging to Delph Nor-Tex Hide Company. The building had been unoccupied for a lengthy period and the owner was attempting to sell or rent the same through the offices of the realtor P. D. Henry. Elliott was the agent and representative for Henry in connection with such attempts. Plaintiff, as a member of an organization of the nature of Chambers of Commerce, had observed the location and size of the building, and the fact that it was a building as distinguished from a building-complex. Noting that it was in the hands of a realtor, plaintiff got into telephonic communication with Elliott. Plaintiff's objective was to "set up" an appointment for the building to be inspected by Mr. Roy Watson. Watson was in need of larger quarters to enable an expansion of his business. We may consider that plaintiff's purpose was purely philanthropic.

During the course of plaintiff's telephone conversation with Elliott there was discussion whereby Elliott stated to him that within the building were pits formerly used in connection with the processing of animal hides, but that they could be or would be filled up and leveled off. Nothing was said relative to any particular part of the building where the pits were located, the number thereof, etc. There was nothing in the conversation which necessarily could be construed to constitute a warning to plaintiff of the existence of a danger in going on the premises by reason of the presence of the pits, but was seemingly related to an existent condition which

would probably require alteration by any new tenant.

As the result of the conversation between plaintiff and Elliott, these two persons and Mr. Roy Watson met at the premises on or about January 17, 1966. Elliott had means of access and opened the door at the front of the building. At the time Elliott did not know the relationship between plaintiff and Mr. Watson. He thought perhaps they were in partnership, and in any event conducted himself in such manner as to indicate that his invitation to enter applied to both plaintiff and Watson. For purposes of this opinion we treat the situation as one in which plaintiff was at all times an invitee.

Immediately inside the place of entrance was what might be termed the "office area". This part of the building was inspected by all present, and thereafter the parties prepared to inspect other areas. On the door leading to the portion of the premises behind the area first inspected was painted the sign "warehouse". The parties entered this door and passed down a passageway of some eight to ten feet leading to another door, the opening of which availed entrance into the portion of the building wherein was located the pits previously mentioned. The switch controlling the lighting of the passageway and/or the area beyond failed to work. Leaving plaintiff and Watson in the passageway Elliott departed with the declared intention to try to find the fuse box, or in any event to do something so that there would be lighting sufficient for further inspection.

Plaintiff elected to attempt to find a method to turn on the lights in the darkened area in which the pits were located, not waiting for the return of Elliott. He said to Watson, "There must be a switch here somewhere, Roy," and began feeling to his left on the wall inside the area in question. He entered the darkened area, feeling along the wall for a light switch. As

he did so he encountered a pit. He fell into the pit and sustained rather extensive personal injuries as the result. It was shown that there were thirty-six such pits in the area.

There was no mention made of the presence of the pits by Elliott to plaintiff, or in his presence, on the occasion when they met at the premises and began the inspection tour. At all times, however, plaintiff was aware that there were pits on the premises. He testified that he appreciated the danger of falling into a pit in moving about in the dark in a place where pits might be encountered. However, it was his contention that he was in the "warehouse" and that presence of pits were not reasonably to be anticipated in the warehouse area though it would be reasonably anticipated in a "processing" area. He admitted that no one had told him that such was true, or that the processing section of the particular premises was not in or a part of the "warehouse" area. It was not shown that he was acquainted with usages of a building for the processing of hides. Knowing, because he was informed, that there were pits in the building and, since there was only a single building, somewhere in the dark beyond the doorway through which he entered, plaintiff made the independent assumption that the place where he was seeking to locate a light switch was not that in which the pits were located. In the assumption he erred, and as a result he fell and was injured.

When a plaintiff is on premises of the defendant the latter is not an insurer of the plaintiff's safety. The basis of liability, if any, of the defendant to the plaintiff is the superior knowledge of the defendant of the unsafe condition as result of which plaintiff sustains injury. When the plaintiff knows of the condition or is told of it, there is no liability to him.

Whether plaintiff was "warned" of the presence of pits in the building upon

**484**

defendant's notice or belief that plaintiff was about to enter the same (in the sense that a warning of danger is ordinarily understood), or whether plaintiff had on a previous occasion been notified of presence of pits in the building, there would be no distinction made in law since the plaintiff actually appreciated the danger of injury from such as constituting an unsafe condition which might be encountered upon entry therein. In either instance, since information concerning presence of the pits had application to the entire building (exclusive of the portion already observed in the inspection tour), the plaintiff's knowledge and appreciation would, in law, be of the precise danger which actually caused his injury. He voluntarily exposed himself to the risk. That risk was the possibility of encountering the pit in the building. Such a case presents an example of a situation where the doctrine of *volenti non fit injuria* has application, and the injured plaintiff who has voluntarily exposed himself to a known and appreciated danger is in law deemed to be a person who has consented to the risk of injury actually sustained and if injury results he may not receive damages from the defendant.

In this opinion we have perhaps unnecessarily considered it as one controlled by *"volenti"* rather than the "no duty" doctrine under which there would be no requirement that defendant establish that plaintiff had voluntarily exposed himself to risk. Here it is immaterial. We have treated the case the same way as have the parties in their briefs.

There have been many recent cases by which we deem the instant case to be controlled. Those most authoritative, from the discussion in which we have arrived at the decision to affirm the lower court judgment, are: Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex. Sup., 1963) (modifying McKee in manner immaterial here); and Western Auto Supply Company v. Campbell, 373 S.W.2d 735

(Tex.Sup.,1963). See also the article: "Assumption of Risk", by Associate Justice Greenhill, in Texas Bar Journal, Vol. 28, No. 1, p. 21, dated January 22, 1965.

Judgment is affirmed.