Nils M. SOLSVIK, Plaintiff,

v.

MAREMAR COMPANIA NAVIERA, S.A., a corporation, and Union Commercial Steamship Co., a corporation, Defendants.

Clayton R. LaPLANT, Plaintiff,

v.

MAREMAR COMPANIA NAVIERA, S.A., a corporation, and Union Commercial Steamship Co., a corporation, Defendants.

Nos. C75–186S, C75–187S.

United States District Court, W. D. Washington.

Aug. 6, 1975.

Harold F. Vhugen, Seattle, Wash., for plaintiff.

Theodore A. LeGros, Thomas F. Paul, Seattle, Wash., for defendant.

## ORDER

BEEKS, Senior District Judge.

Solsvik and LaPlant are longshoremen in the employ of Rothschild Washington International Stevedoring Co., an independent contractor engaged by defendants to discharge cargo from defendants' vessel M/V AETOS in the Port of Seattle. Plaintiffs allege injuries suffered in the course of discharge operations on January 3 and January 6, 1975, respectively, and contend that the injuries were the proximate result of the negligence of defendants.

The cases are now before the Court on cross-motions to strike pursuant to Fed. R.Civ.P. 12(b), and, insofar as the two cases involve identical issues of law, they will be treated together.

## I. PLAINTIFFS' MOTIONS TO STRIKE AFFIRMATIVE DEFENSES

Defendants' answers contain affirmative defenses that seek to impose reductions on plaintiffs' potential recoveries by reason of the alleged concurrent negligence of Rothschild. The affirmative defenses seek to reduce each plaintiff's recovery by the combined percentage of contributory negligence of the respective plaintiff and Rothschild, or, in the alternative, by the greater of (1) the amount of benefits recovered by each plaintiff under the Longshoremen's and Harbor Workers' Compensation Act [1] or (2) fifty percent.

Plaintiffs move to strike these affirmative defenses, contending that the law, specifically the 1972 Amendments (which became effective November 26, 1972, and are hereinafter referred to as the "Amendments") [2] to the Longshoremen's and Harbor Workers' Compensation Act, does not countenance reduction of plaintiffs' recoveries under any of the theories proposed by defendants. I agree.

The Amendments manifest the balance achieved by Congress among the competing rights and obligations of shipowners, stevedores and longshoremen. If, indeed, inequities exist under the Congressional scheme, then relief therefrom must be sought through legislation. *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corporation*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

Accordingly, I choose to follow the reasoning expressed in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F. Supp. 759 (E.D.Pa.1974) [3] and hold that defendants are unable to impose the reductions sought against plaintiffs' po-

tential judgments. Plaintiffs' motions to strike affirmative defenses are therefore granted.

## II. DEFENDANTS' MOTIONS TO STRIKE ALLEGATIONS OF THE COMPLAINTS

The complaint in each case alleges the injury to plaintiff, and asserts that ". . . defendants were negligent and failed to furnish plaintiff with a safe place to work." The complaints further state that plaintiffs suffered damages as a direct and proximate result of the negligence of defendants.

Defendants contend that the failure to provide a safe place to work is no longer actionable in light of the Amendments, and that each such allegation should be stricken for failure to state a claim upon which relief can be granted.

There is no doubt but that the Amendments restrict a longshoreman's cause of action against a shipowner to that grounded in negligence:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b).

The legislative history of the Amendments indicates that Congress intended

---

1. 33 U.S.C. § 901 et seq.

2. Act of October 27, 1972, Pub.L. No. 92–576, 86 Stat. 1263.

3. *See also Landon v. Lief Hoegh and Co.*, 521 F.2d 756 (2nd Cir. 1975); *Hubbard v.*

*Great Pacific Shipping Co.*, Civil No. 74–289 (D.Or., June 16, 1975); *Santino v. Liberian Distance Transports, Inc.*, Civil No. 524–73C2 (W.D.Wash., Order of Voorhees, J. dated June 2, 1975); *Dodge v. Mitsui Shintaku Ginko K.K. Tokyo*, Civil No. 73–852 (D. Or., Aug. 19, 1974).

that a uniform national standard be applied to the conduct of shipowners:

> "Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions shall be determined as a matter of Federal law." [4]

The substantive content of the negligence standard to be applied is linked to traditional land-based negligence law:

> "The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness', 'nondelegable duty', or the like." [5]

■ To the extent that an allegation of failure to provide a safe place to work might, prior to the Amendments, have implied the existence of a nondelegable duty to do so, and to the extent that such an allegation formerly brought to bear strict liability under the related warranty of seaworthiness, the allega-tion is no longer actionable under the Amendments.[6]

However, placed in its proper post-Amendment context, such an allegation may state a cause of action consistent with application of the appropriate standard of negligence. The Supreme Court has held that "one aspect of the shipowner's duty to refrain from negligent conduct is embodied in his duty to exercise reasonable care to furnish a safe place to work." *West v. United States*, 361 U.S. 118, 123, 80 S.Ct. 189, 193, 4 L.Ed.2d 161 (1959).

■■ Although the pleadings in the cases at bar are insufficient to apprise the Court of the precise nature of the alleged causes of plaintiffs' injuries, it is conceivable that the alleged failure to provide a safe place to work was a *negligent* failure to do so within the meaning of that word as it must be applied under the Amendments.[7] A claim is not vulnerable to dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). Since there are potential factual situations under which plaintiffs can recover on the alleged failure to provide a safe place to work, those claims should not be dismissed or stricken at this time.

Accordingly, defendants' motions to strike those allegations of the complaints are denied.

---

4. H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 8 (1972); S.Rep.No.92–1125, 92d Cong., 2d Sess. 12 (1972), U.S.Code Cong. & Admin. News 1972, at 4705.

5. H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 6 (1972); S.Rep.No.92–1125, 92d Cong., 2d Sess. 10 (1972), U.S.Code Cong. & Admin. News 1972, at 4703.

6. *Ramirez v. Toko Kaiun K.K.*, 385 F.Supp. 644 (N.D.Cal.1974); *Fedison v. Wislica*, 382 F.Supp. 4 (E.D.La.1974); *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974).

7. Although the parties have, with considerable scholarly effort, briefed the issue of the appropriate standard of care to be applied in a negligence action under the Amendments, it would be inappropriate for the Court, based upon the bare allegations of negligence in the complaints, to address that issue at this stage of the proceedings. The applicable standard, and the question of whether there has been a breach thereof can more fruitfully be considered after the underlying factual situations have been brought to light.