Roosevelt GAY and Florence Gay, his wife, Plaintiffs-Appellants,

v.

OCEAN TRANSPORT & TRADING, LTD., Defendant-Appellee,

Argonaut Insurance Company, a Foreign Corp., Intervenor.

Elias G. GUERRA, Plaintiff-Appellant,

v.

BULK TRANSPORT CORP. et al., Defendants-Appellees,

v.

Texas Employers' Insurance Association, Intervenor-Appellant.

Nos. 75–2729 and 75–2441.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1977.

Rehearings and Rehearings En Banc Denied March 11, 1977.

R. Thomas Farrar, William M. Alper, Miami, Fla., for plaintiffs-appellants.

Wm. B. Milliken, Miami, Fla., for defendant-appellee.

John R. Geraghty, Louis J. Gusmano, New York City, Ross M. Diamond, III, Mobile, Ala., E. D. Vickery, Houston, Tex., amicus curiae, for West Gulf Maritime Assoc.

Chas. W. Tullis, Houston, Tex., for E. G. Guerra.

James L. Walker, Houston, Tex., for Texas Employers', etc.

Joseph D. Cheavens, Houston, Tex., for Bulk Transport Corp.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

In each of these two cases a longshoreman in the employ of an independent stevedore sued the vessel on which he was working when injured. The cases present a common question: What standard of negligence is to be applied in suits brought against vessels under the amended Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq* (Supp. II 1972)? The parties and several amicus curiae have briefed this issue in a commendably comprehensive and articulate fashion. We will, therefore, first elaborate the standards we find appropriate in cases where a vessel is sued by an injured employee, and then we will apply those standards to the cases before us.

I

When Congress undertook revision of the LHWCA in 1972, it was faced with the problem of what to do about the judicial undermining of the exclusive liability provision for employers.[1] Under *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the employee could sue the vessel for unsea-

1. Act of March 4, 1927, ch. 509, § 5, 44 Stat. 1425, *now codified at* 33 U.S.C. § 905(a) (Supp. II 1972):

The liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

worthiness and the vessel could then demand indemnity from the stevedore/employer on the theory that it had breached an express or implied warranty of workmanlike performance to the vessel.[2] The solution selected was to improve compensation benefits while at the same time making a vessel liable only for its own negligence rather than for unseaworthiness.[3] To effect this result, section 905(b) was added to the Act:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.[4]

Our task here is to flesh out what Congress intended by its use of the phrase "negligence of the vessel". For assistance we turn to the House Report and quote at some length.

> The Committee believes that where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.

> \* \* \* \* \* \*

> . . . This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness", "non-delegable duty", or the like.

> \* \* \* \* \* \*

---

**2.** *See generally Smith v. M/S Captain Fred,* 546 F.2d 119, No. 75–1910 (5th Cir. Jan. 28, 1977); H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News pp. 4698, 4702.

**3.** The House Report put it in these words:

Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. H.R.Rep. No. 1441, 92d Cong., 2d

Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News pp. 4698, 4703.

**4.** 33 U.S.C. § 905(b) (Supp. II 1972). For discussions of the 1972 Amendments to the LHWCA and their effect, *see generally Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975) *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Croshaw v. Koninklijke Nedlloyd, B. V. Rijswijk,* 398 F.Supp. 1224 (D.Or.1975); *Ramirez v. Toko Kaiun K. K,* 385 F.Supp. 644 (N.D.Cal.1974); *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974).

Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.

\* \* \* \* \* \*

Under this standard, as adopted by the Committee, there will, of course, be disputes as to whether the vessel was negligent in a particular case. Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties. The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under similar circumstances.

\* \* \* \* \* \*

Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of "assumption of risk" in an action by an injured employee shall also be applicable.[5]

From these passages and section 905(b) itself we distill the following conclusions:

(1) Congress intends for the federal courts to develop a uniform federal common law to control LHWCA suits against vessels.[6]

(2) That LHWCA federal common law is to be based on negligence concepts; the unseaworthiness of a vessel is not an acceptable ground for relief.

(3) LHWCA negligence law is to be guided primarily by analogy to land-based law concepts.[7] The stevedore is to be viewed

---

**5.** H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News pp. 4698, 4702–05.

**6.** *Cf. Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (uniform federal law to be applied in LHWCA actions); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Robins Drydock & Repair Co. v. Dahl,* 266 U.S. 449, 457, 45 S.Ct. 157, 69 L.Ed. 372 (1925); *So. Pac. Co. v. Jensen,* 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Branch v. Schumann,* 445 F.2d 175, 178 (5th Cir. 1971).

**7.** In *Brock v. Coral Drilling, Inc.,* 477 F.2d 211 (5th Cir. 1973), we stated in dicta that section 905(b) places the shipowner, "in so far as third party liability is concerned, in the same position as land-based third parties in non-maritime pursuits." *Id.* at 213 n.1. Even a cursory ex-

amination of the legislative history demonstrates that the *Brock* court was correct. Moreover, the following courts have applied land-based concepts of negligence in section 905(b) suits: *Anuszewski v. Dynamic Mariners Corp.,* 540 F.2d 757 (4th Cir. 1976) (per curiam), *aff'g,* 391 F.Supp. 1143 (D.Md.1975); *Butler v. O/Y Finnlines, Ltd.,* 537 F.2d 1205, 1206 n.2 (4th Cir. 1976); *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505 (2d Cir. 1976); *Cummings v. "Sidarma" Soc.,* 409 F.Supp. 869 (E.D. La.1976); *Solsvik v. Maremar Compania Naviera, S.A.,* 399 F.Supp. 712 (W.D.Wash.1975); *Croshaw v. Koninklijke Nedlloyd, B. V. Rijswijk,* 398 F.Supp. 1224 (D.Or.1975); *Frasca v. Prudential-Grace Lines, Inc.,* 394 F.Supp. 1092 (D.Md.1975); *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 413 (E.D.La. 1975); *Jackson v. Lykes Bros. Steamship Co.,*

generally as an independent contractor and its employees as invitees of the vessel owner.

(4) However, certain common land-based principles of state law are not to be carried over into the federal law governing LHWCA suits. Assumption of risk may not be utilized as a defense, and comparative negligence, rather than contributory negligence, is to be applied.

■ Our brethren in the Second and Fourth Circuits have already faced the problem before us and have agreed that land-based principles are to guide in the establishment of a federal law. *Anuszewski v. Dynamic Mariners Corp.*, 540 F.2d 757 (4th Cir. 1976); *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505 (2d Cir. 1976). Moreover, those circuits have both relied upon the Restatement (Second) of Torts for guidelines. 540 F.2d at 759; 536 F.2d at 508–09. In the interest of fulfilling the Congressional desire of uniformity, we, too, adopt the Restatement formulation. Restatement (Second) of Torts § 342 (1965) provides,

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

Section 343 states,

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against danger.

Section 343 A continues,[8]

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

These general standards should be utilized in the future to assure uniformity in cases brought under section 905(b) of the LHWCA to recover for injuries caused by the negligence of the vessel. We proceed now to apply these standards to the cases before us.

No. B–74–38 (E.D.Tex. July 16, 1975); *Robinson v. Dixie Machine Welding & Metal Works, Inc.*, No. 74–533 (E.D.La. May 1, 1975); *Parker v. Costa Amatori S. P. A.*, No. 74–454–N (E.D.Va. April 23, 1975); *Johnson v. Zenith Navigation*, No. 74–1502 (E.D.La. Feb. 12, 1975); *Slaughter v. S. S. Ronde*, 390 F.Supp. 637 (S.D.Ga.1974), aff'd per curiam, 509 F.2d 973 (5th Cir. 1975); *Birrer v. Flota Mercante Grancolombiana*, 386 F.Supp. 1105 (D.Or. 1974); *Ramirez v. Toko Kaiun K. K.*, 385 F.Supp. 644 (N.D.Cal.1974); *Citizen v. M/V*

*Triton*, 384 F.Supp. 198 (E.D.Tex.1974); *Fedison v. Vessel Wislica*, 382 F.Supp. 4 (E.D.La. 1974); *Hite v. Maritime Overseas Corp.*, 380 F.Supp. 222 (E.D.Tex.1974); *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974).

8. Restatement (Second) of Torts § 343, comment a (1965), instructs that section 343 "should be read together with § 343 A . . .."

## II

### A. No. 75–2729

Roosevelt Gay was employed as a longshoreman by Atlantic Stevedoring Co. On the date of his injury he was assigned to operate a propane forklift in an unventilated reefer compartment aboard the M/V Prometheus. To remove the noxious fumes emitted by the forklift, a blower was placed on board the vessel by the stevedore. Unfortunately, the air hose connected to the blower was not long enough to reach into the reefer compartment. Approximately one hour after operations began, the plaintiff and other longshoremen working with him began to feel ill. Gay was removed from the vessel and taken to a local hospital, where it was determined that he had suffered carbon monoxide poisoning from the inhalation of the fumes.

Gay admits that the duty to provide a blower to remove the fumes from the compartment rested on his employer, the stevedore, and not on the vessel. He further acknowledges that the operators of the vessel had no knowledge that the dangerous condition existed. Still, they attempt to predicate a theory of possible vessel liability upon the fact that a federal regulation was violated. That regulation requires the employer to ascertain the quantity of carbon monoxide in a compartment like that in question here within thirty minutes after placement of a forklift into the compartment. 29 C.F.R. § 1918.93(a)(1)(i) (1976). This was not done by Gay's employer. Gay argues, however, that this regulation can provide the standard of care for a negligence action against the vessel.

We disagree. The vessel had no similar duty to check the carbon monoxide content of the compartment.[9] Gay's argument is, in effect, that the vessel has a non-delegable duty to provide a longshoreman with a safe place to work. But this is exactly the type of liability without fault concept from which Congress sought to free vessels by the passage of the 1972 Amendments.[10] *Napoli*, 536 F.2d at 507; *Bess v. Agromar Line*, 518 F.2d 738 (4th Cir. 1975); *Solsvik v. Maremar Compania Naviera, S.A.*, 399 F.Supp. 712 (W.D.Wash.1975); H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News pp. 4698, 4703. Section 905(b) instructs that a long-

---

9. 29 C.F.R. § 1918.2(b) (1976) makes clear that the regulation only applies to employers and not vessels:

> It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of those regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom.

Even under the pre-1972 LHWCA, the general principle was that "liability for failure to comply with safety regulations should be imposed on the party exposing the injured employee to the dangerous condition." *Brock v. Coral Drilling, Inc.*, 477 F.2d 211, 215 (5th Cir. 1973). *See also Burrage v. Flota Mercante Grancolombiana*, 431 F.2d 1229 (5th Cir. 1970).

10. In *Teofilovich v. D'Amico Mediterranean/Pacific Line*, 415 F.Supp. 732 (C.D.Cal. 1976), the court refused to apply Restatement (Second) of Torts §§ 413 & 416 (1965) to hold a shipowner vicariously liable for the negligence of the stevedore, holding that this "would do violence to the letter and policy of 33 U.S.C. § 905(b). . . . Congress specifically excluded a rule of vicarious liability, specifically excluded a rule of liability without fault and specifically excluded the concept of a non-delegable duty, all of which are the express and explicit result of section 416." 415 F.Supp. at 734–36. *See also Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092 (D.Md.1975); *Anuszewski v. Dynamic Mariners Corp.*, 391 F.Supp. 1143, 1145 (D.Md.1975), aff'd, 540 F.2d 757 (4th Cir. 1976) (per curiam); *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974).

We repeat at this point the admonition of the House Report that "nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." H.R.Rep. No. 1441, 92d Cong. 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News pp. 4698, 4704. *See also West v. United States*, 361 U.S. 118, 123, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); *Marant v. Farrell Lines, Inc.*, No. 73–2615 (E.D.Pa. Jan. 15, 1976); *Solsvik v. Maremar Compania Naviera, S.A.*, 399 F.Supp. 712 (W.D.Wash.1975); *Frasca*, 394 F.Supp. at 1098. It is uncontroverted here, however, that the vessel did not have either actual or constructive knowledge of the dangerous carbon monoxide level.

shoreman does not have a cause of action against a vessel if his injury "was caused by the negligence of persons engaged in providing stevedoring services to the vessel." Such is the case here. Since the district court granted summary judgment for the vessel, that judgment must be affirmed.

## B. No. 75–2441

Elias Guerra worked as a longshoreman for the Shippers Stevedoring Co. (Shippers). Shippers was hired to unload steel, varying in length from forty to sixty-five feet, from the vessel M/V Lyra. In order to remove the steel from its compartment, the ship's boom, operated by an employee of the stevedore, was first used to raise the steel enough to get wooden blocks underneath it. Then the boom was swung out of the way so that an on-shore crane and chains could be brought into the hold to remove the steel. The accident occurred when the ship's boom was swinging into position over the hold. The boom's breakout wire snagged on a 125-pound pallet which was stacked by the hatch coaming, causing it to fall about thirty feet into the hold and strike Guerra on the back of the head and right shoulder.

The pallets had been transported on top of the steel in the holds, and so prior to unloading they had had to be removed. This task was performed by the stevedore, and Shippers stacked them next to the hatch coaming after being informed by crew members that they could not be placed on the dock. Although the hazardous condition was readily apparent and brought to the attention of the supervisory personnel of Shippers by its longshoremen, the pallets were not removed or tied down to prevent what foreseeably occurred. After a bench trial, the district court found that Shippers had been negligent in creating the dangerous condition, in failing to correct it and in its operation of the ship's cargo boom. The court found no negligence on the part of the vessel but did determine that the danger was open and obvious and as well known to the shipowner as it was to the stevedore. Applying land-based negligence concepts, the court concluded that the "shipowner was under no duty to warn the independent stevedoring contractor or his employees, including the plaintiff, of the open and obvious danger which the independent contractor created aboard the vessel and which was admittedly known and appreciated by the independent contractor's employees, including the plaintiff." Appendix at 125.

 We hold that the district court had ample evidence to support his findings of fact and, hence, that they are not clearly erroneous. The court was also correct in adopting land-based negligence principles to decide this case, as we have already explained. It is clear that the vessel has no liability under section 905(b) since the sole cause of injury was the negligence of the stevedore.[11]

 Comment need be made, however, about the possible intimation of the holding of the district court that a vessel has no duty concerning any danger which is open and obvious to the stevedore or its employees.[12] This indeed has been the traditional rule concerning owners of land and their invitees,[13] and it has been applied in several

---

**11.** We have recently explained that in all tort cases, be they strict liability or ordinary negligence cases, causation must be established before recovery will be allowed. *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977).

**12.** We do not intend to fault the district court. It noted the open and obvious nature of the danger, but did not hold that that fact, operating alone, relieved the vessel of liability. Instead, Restatement (Second) of Torts § 343 A (1965), the appropriate guideline, was cited and, as we shall note in the text *infra*, appropriately applied. *See* Appendix at 126.

**13.** The traditional rule is found in Restatement of Torts § 340 (1934): "A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein." Cases applying the traditional rule are collected in Annot., 35 A.L. R.3d 230, 244–53 (1971).

suits brought under section 905(b).[14] The traditional rule's appropriateness in LHWCA suits has been rejected by several courts, however,[15] for two cogent reasons.

First, the traditional rule has increasingly given way in recent years to the view that the obviousness or knowledge of a dangerous condition on certain property does not necessarily relieve the owner of his obligation to take further precautions to remedy the danger.[16] This modern trend has been reflected in section 343 A of the Restatement (Second) of Torts, which we adopted *supra*. We agree with the Second Circuit that "[a]lthough the invitee (or in this case the employee) may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it." [17] *Napoli*, 536 F.2d at 508.

The more telling criticism of the traditional rule, however, is that it is premised in large part on the concepts of contributory negligence and assumption of risk.[18] As

**14.** *See, e. g., Cummings v. "Sidarma" Soc.*, 409 F.Supp. 869 (E.D.La.1976); *Robinson v. Dixie Machine Welding & Metal Works, Inc.*, No. 74–533 (E.D.La. May 1, 1975); *Fedison v. Vessel Wislica*, 382 F.Supp. 4 (E.D.La.1974); *Hite v. Maritime Overseas Corp.*, 380 F.Supp. 222 (E.D.Tex.1974). *See also Ramirez v. Toko Kaiun K. K.*, 385 F.Supp. 644 (N.D.Cal.1974).

**15.** *See, e. g., Napoli v. Hellenic Lines*, 536 F.2d 505 (2d Cir. 1976); *Croshaw v. Koninklijke Nedlloyd, B. V. Rijswijk*, 398 F.Supp. 1224 (D.Or.1975); *Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092 (D.Md.1975).

**16.** *See generally* Annot., *supra* note 13, at 254–62.

**17.** Dean Prosser in his treatise gives a more elaborate explanation of the modern rule:

Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it. It is true also where the condition is one such as

icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough. W. Prosser, The Law of Torts § 61, at 394–95 (4th ed. 1971) (footnotes omitted).

In *Brock v. Coral Drilling, Inc.*, 477 F.2d 211 (5th Cir. 1973), we recognized similar principles in a LHWCA case in which the 1972 Amendments were not applicable. In that case, the plaintiff Brock was aware of hazardous conditions existing on the vessel on which he was working, but continued to work after protests to his supervisor proved unavailing. We affirmed a finding that Brock had met the standard of ordinary prudence, noting that he was economically dependent upon the stevedore for future employment. *Id.* at 215.

**18.** *Napoli*, 536 F.2d at 508; Annot., *supra* note 13, at 236, 263–65, 269–72. Illustrative of those cases holding that the obviousness of a dangerous condition is proof of contributory negligence as a matter of law is *Parvino v. Wellman's Funeral Parlors, Inc.*, 176 So.2d 749 (La.App.1965). In *Parvino* the court held that, even if the steps on which the plaintiff fell were wet and slippery, since he had shortly before traversed them, he was aware of their condition and was thus guilty of contributory negligence in his misadventure. *Id.* at 751. *See also Romano v. Juneau*, 198 So.2d 499 (La.App. 1967).

An example of the traditional rule utilizing the assumption of risk rationale is *Wade v. Roberts*, 118 Ga.App. 284, 163 S.E.2d 343 (1968). In *Wade* the plaintiff slipped and fell on a driveway over which was strewn loose gravel. The court held that "by walking thereon she assumed any risks incident thereto and was guilty of such lack of ordinary care for her own safety as would prevent a recovery." *Id.* at 287, 163 S.E.2d at 345. *See also Rogers v. Atlanta Enterprises, Inc.*, 89 Ga.App. 903, 81

previously recounted, both of these concepts are inappropriate in section 905(b) cases. It would be wholly improper, then, indirectly to introduce these principles into LHWCA suits by adopting the traditional rule that if a hazard is open and obvious that fact alone absolves the owner of his negligence.[19]

■ Despite our rejection of the traditional rule, we still affirm the judgment of the district court in this case. Even though the crew of the vessel was aware of the dangerous condition presented by the stack of pallets, it was the stevedore who created the hazard in the first place and it was the stevedore that failed to tie the pallets down and then carelessly knocked one into the hold. This was not the type of danger that must be faced notwithstanding knowledge. The finding of the district court that the stevedore's negligence was the sole proximate cause of Guerra's injury is not clearly erroneous.

### III

■ These cases have presented for our review the issue of what standard should be applied when a vessel is sued for its negligence under section 905(b) of the LHWCA. In the interests of uniformity among the courts of this circuit and throughout the federal system, we have adopted the formulation of the Restatement (Second) of Torts §§ 342, 343 & 343 A (1965).[20] Applying those standards to the cases before us, they are both hereby AFFIRMED.

S.E.2d 721 (1954); *Bradley v. Delph Nor-Tex Hide Co.*, 428 S.W.2d 481 (Tex.Civ.App.1968).

**19.** Of course, that the danger is open and obvious or that the plaintiff had knowledge of the hazard will likely be highly relevant to the appropriate inquiry into the comparative negligence of the employee.

**20.** By adopting as guidelines the land-based principles found in the Restatement (Second) of Torts, we do not indicate, of course, that vessel owners have the identical duties of owners of land. A ship presents its own special hazards. As always, a determination of the reasonableness of a defendant's actions (or lack thereof) requires an examination of all the circumstances surrounding the injury.