573 F.2d 884
 Nathaniel SAMUELS, Plaintiff-Appellee,
v.
EMPRESA LINEAS MARITIMAS ARGENTINAS, a Foreign Corporation,
Defendant-Third-Party-Plaintiff-Appellant,
v.
SOUTHPORT STEVEDORES, INC., Third-Party Defendant,
Employers Mutual Liability Insurance Company of Wisconsin, a
corporation, Intervenor.
 No. 76-2129.
 United States Court of Appeals,
Fifth Circuit.
 May 26, 1978.
 
 Nathaniel G. W. Pieper, Tampa, Fla., for defendant-third-party-plaintiff-appellant.
 Wagner, Cunningham, Vaughan, Hapner & May, Roger Vaughan, Tampa, Fla., Robert Orseck, Joel D. Eaton, Miami, Fla., for plaintiff-appellee.
 Brown, Dixon, Shear, Brown & Stephenson, Tampa, Fla., for Southport.
 Edward F. Gerace, Tampa, Fla., for Employers, etc.
 Appeal from the United States District Court for the Middle District of Florida.
 Before, SKELTON*, Senior Judge, and FAY and RUBIN, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 This appeal raises two questions under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, et seq. : the sufficiency of the evidence to support a verdict in favor of an injured longshoreman who has sued the vessel aboard which he was working for negligence in accordance with the provisions of Section 905(b) of the Act under the standards set forth by us in detail in Gay v. Ocean Transport & Trading, Ltd., 5 Cir. 1977, 546 F.2d 1233; and, if the longshoreman recovers, whether the vessel may reduce the recovery by the extent of the fault of the plaintiff's employer in contributing to the injury.
 
 
 2
 Because we conclude that the jury verdict was adequately supported by the evidence, we reach the second issue and determine that the employer-stevedore's negligence would not, if proved, affect the longshoreman's recovery. Therefore, the trial court correctly refused to submit the issue of the stevedore's negligence to the jury.
 
 I.
 
 3
 In Gay, supra, we adopted the rules set forth in the Restatement (Second) of Torts as standards for determining what is negligence under Section 905(b).[1] See Munoz v. Flota Merchante Grancolombiana, S.A., 2 Cir. 1977, 553 F.2d 837, adopting the Gay standards; see also Brown v. Mitsubishi Shintaku Ginko, 5 Cir. 1977, 550 F.2d 331. Whether the evidence was sufficient to support the jury's verdict under Restatement criteria is measured by the long-standing test summarized in black letter fashion in Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374:
 
 
 4
 If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting . . . (Rule 50, F.R.C.P.) motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
 
 
 5
 The plaintiff was injured when he was unloading cargo from the hold of a vessel owned by the defendant and located at a wharf in Tampa, Florida. The cargo consisted of a number of steel beams, some 20 feet long and some 40 feet long, stacked horizontally. With the aid of dunnage, they formed a floor well above the actual bottom of the hold. The stacks of beams parted to accommodate a vertical stanchion (steel beam), which rises from the bottom of the hold to the deck. A steel ladder ran along the length of the stanchion as a means of access to the hold. Because the beams abutted only three sides of the stanchion-ladder, there was a space behind the ladder as wide as the ladder, described variously by the witnesses as from 16 inches to 2 1/2 feet in width. On April 13, 1973, at 9:30 p. m., the plaintiff slipped or stepped backwards into this void after getting a drink of water from a cooler.
 
 
 6
 There was evidence that the stevedore foreman and one or more of the other longshoremen knew of the hole; but there was evidence that the plaintiff himself did not know of it, and that it had never been called to his attention. There was no dunnage over the cavity. The opening would have been open and obvious had the area been well lighted.
 
 
 7
 The ship was being unloaded at night. It had no fixed or permanent lights under the tween deck of the lower hold. Therefore, it was necessary to use drop lights arranged in a cluster beneath a reflector to provide sufficient illumination for the work to proceed. The lights were provided by the ship but placed by the stevedore's personnel. One was placed on each of the four corners of the hatch opening. This provided enough light to enable the men to work.
 
 
 8
 The degree of illumination, however, was not clearly established. Some witnesses testified that they could see the hole into which the plaintiff fell; another that it was obscure; one testified that the level of illumination was good; another that the lights dimmed from time to time. There is evidence that the ship's crew had used flashlights to inspect cargo in the hold. There is evidence that if longshoreman had complained that the hold was too dark for work to proceed safely, it would have been stopped; but there is also evidence that the gang foreman complained to ship personnel that "they had pretty dim lights back there," yet work was not stopped.
 
 
 9
 The ship's personnel did not supervise the unloading, nor was any of the ship's company in the hold while the vessel was being unloaded. Because of the length of the steel beams, it was necessary to tilt them and move them out of the hold at an angle. There was evidence that one of the lights was broken by a lift of cargo a few seconds before the plaintiff was injured.
 
 
 10
 Under the Gay standards, the shipowner is subject to liability if it knows of, or has reason to know of, a condition on the vessel, should realize that the condition involves an unreasonable risk of harm to a longshoreman, should expect that the longshoreman will not discover or realize the danger, and fails to exercise reasonable care to make the condition safe or warn the longshoreman of it. There was evidence to support the jury's conclusion that each of these Section 342 criteria was met. The jury might have concluded that the crew's inspection of the hold before the work began was sufficient to charge the vessel owner with knowledge of the existence of the hole and the danger created by it.
 
 
 11
 We need not similarly parse Sections 343 and 343(a). The defendant withdrew his requested instruction with respect to liability for open and obvious dangers,[2] and the issue is not raised on appeal.
 
 
 12
 We do not sit, indeed we are constitutionally forbidden, to reappraise the evidence. Reasonable and fair-minded people could have weighed the evidence to impose liability under the landowner standards set forth in the Restatement and firmly adopted by us. Boeing impels us to affirm the judgment entered on the jury's verdict.
 
 II.
 
 13
 Other courts of appeals have considered the question, to us res nova, whether the negligence of the plaintiff's LHWCA employer may reduce the plaintiff's recovery against a vessel sued pursuant to Section 905(b) and have, after considerable discussion, reached differing views. The Fourth Circuit in Edmonds v. Compagnie Generale Transatlantique, 4 Cir. 1977, 558 F.2d 186, rehearing en banc granted June 3, 1977, held that the liability of the vessel is to be "confined to its own negligence;" therefore, if contributory fault on the part of the employer is shown, the plaintiff's recovery should be reduced to the extent of his employer's negligence. The plaintiff may, in addition, retain the compensation he has received; and the employer may recoup what he has paid from the vessel, because of the subrogation provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(b).
 
 
 14
 The rationale for not reducing the longshoreman's recovery because of his employer's negligence was set forth by the Ninth Circuit in Dodge v. Mitsui Shintaku Ginko K.K. Tokyo, 9 Cir. 1975, 528 F.2d 669, cert. denied, 1976, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188, and in Shellman v. United States Lines, Inc., 9 Cir. 1975, 528 F.2d 675, cert. denied, 1976, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177. A similar conclusion was reached (in dicta) by the Second Circuit in Landon v. Lief Hoegh & Co., 2 Cir. 1975, 521 F.2d 756, 763, cert. denied sub nom., 1976, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642.
 
 
 15
 The Third Circuit has discussed the issue pro and con and reserved decision in Marant v. Farrell Lines, Inc., 3 Cir. 1977, 550 F.2d 142. See also Wescott v. Impresas Armadoras, S.A. Panama, 9 Cir. 1977, 564 F.2d 875, 878, note 5; Santino v. Liberian Distance Transports, Inc., W.D.Wash.1975, 405 F.Supp. 34; Solsvik v. Maremar Compania Naviera, S.A., W.D.Wash.1975, 399 F.Supp. 712; Croshaw v. Koninklijke Nedlloyd, B.V. Rijswijk, D.Or.1975, 398 F.Supp. 1224; Lucas v. "Brinknes" Schiffahrts Ges., E.D.Pa.1974, 379 F.Supp. 759.
 
 
 16
 In a case arising under the Federal Employees' Compensation Act, 5 U.S.C. § 8101, et seq., the District of Columbia Circuit allowed what has come to be known as the "Murray Credit" and allowed the tortfeasor in a common law tort action to claim a 50 percent credit if the compensation-covered plaintiff's employer were found to be contributorily negligent. Murray v. United States, 1968, 132 U.S.App.D.C. 91, 405 F.2d 1361. It later extended the same principle to an employee-plaintiff covered by the Longshoremen's and Harbor Workers' Compensation Act. Dawson v. Contractors Transport Corp., 1972, 151 U.S.App.D.C. 401, 467 F.2d 727, a pre-1972 amendment case.
 
 
 17
 In addition, a number of legal scholars have probed for a solution. Robertson, Negligence Actions by Longshoremen Against Shipowners Under the 1972 Amendments, etc., 1976, 7 Journal of Maritime Law and Commerce, 447, 480, et seq. ; Cohen and Dougherty, The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: An Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation, 1974, 19 N.Y.L. Forum 587; Shorter, In the Wake of the 1972 Amendments to the L. & H.W.C.A.: The Vessel's Rights Against the Stevedore, 1976, 7 J. of Mar.L. & Com. 671; Steinberg, The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Negligence Actions by Longshoremen Against Shipowners A Proposed Solution, 1976, 37 Ohio St.L.J. 767; Coleman and Daly, Equitable Credit: Apportionment of Damages According to Fault in Tripartite Litigation Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 1976, 35 Md.L.Rev. 351; Robertson, Jurisdiction, Shipowner Negligence and Stevedore Immunities under the 1972 Amendments to the Longshoremen's Act, 1977, 28 Mercer L.Rev. 515; Effect of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act on Third-party Litigation Between Longshoremen, Shipowners and Stevedores, 1976, 8 U.W.L.A.L.Rev. 89.
 
 
 18
 There is little to be added to the articulate reported decisions or to the commentary. To reiterate or paraphrase the extensive judicial discussions would merely further proliferate the pages of print. We adhere to the logic of the Ninth Circuit.
 
 
 19
 In reaching our own conclusion, we start with the premise that, under the Act, the employer is immune to suit for indemnity or contribution by the vessel. 33 U.S.C. § 905; see White v. Texas Eastern Transmission Corp., 5 Cir. 1975, 512 F.2d 486, cert. denied sub nom., 1976, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638; Aetna Casualty & Surety Co. v. Service Contracting, Inc., 5 Cir. 1973, 490 F.2d 299. The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act evidence no intention of overruling Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 1974, 417 U.S. 106, 112-113, note 6, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694.
 
 
 20
 The fundamental Congressional aims in 1972 were two-fold: (1) eliminate the unseaworthiness action but leave in its stead a negligence action with promotion of shipboard safety as a primary focus; (2) eliminate any form or vestige of the shipowner's attempt to shift liability (in whole or in part, directly or indirectly) to the stevedore. See Robertson, supra, 7 J.Mar.L. & Com. at 484-85. Permitting an off-set would undermine these aims by effectuating without litigation the results of a shipowner contribution action against the stevedore and by reducing the consequence to the shipowner of its own negligence.
 
 
 21
 In passing the amendments, Congress effected a compromise, see Hurst v. Triad Shipping Co., 3 Cir. 1977, 554 F.2d 1237, 1244, cert. denied, 1977, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134: the vessel owner obtained the abolition of the warranty of seaworthiness, and the substitution of common law negligence (the Gay standard) for maritime negligence; the employer was insulated from double liability by elimination of the warranty of workmanlike performance spawned in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and the longshoreman's compensation benefits were increased and the geographic area of coverage expanded. See Northeast Marine Terminal Co., Inc. v. Caputo, 1977, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320. It is not apparent that the vessel owner was saddled with a disproportionate burden under the scheme. The plaintiff's recovery is still reduced proportionately to his own fault, Pope and Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; see Edmonds, supra, 558 F.2d at 189; Dodge, supra, 528 F.2d at 673; Landon, supra, 521 F.2d at 760, and the Act does not prevent the shipowner from seeking either contribution or indemnity from third persons other than from a covered plaintiff's employer. But the Act does mandate that the employer's exclusive liability will be compensation under the Act.
 
 
 22
 If there is a further adjustment to be made when the vessel's common law negligence is concurrent with the plaintiff's employer's negligence, the decision is for the Congress. Allowing an offset or credit raises questions best decided by a legislative body which can account for factors that we may not appropriately consider: what kind of employer negligence reduces the longshoreman's recovery: common law or maritime? (That is, should the standards of judging employer negligence be the same as those applicable to the vessel under Section 905(b)?) Should the recovery by the subrogated employer also be reduced? What should happen when the compensation liability of the employer exceeds the reduced recovery of the plaintiff? See Federal Marine Terminals, Inc. v. Burnside Shipping Co., 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371, and discussion in Landon, supra, 521 F.2d at 760-761.
 
 
 23
 Under the present law, if the employer is found negligent, it (or, most likely, its insurer) would nonetheless be made whole via the compensation lien. Albert v. Paulo, 5 Cir. 1977, 552 F.2d 1139, and cases cited therein. To permit the employer's negligence to reduce the joint tortfeasor vessel's liability would reduce the award of plaintiff, the one person who is blameless. The innocent victim of concurrent negligence would find that, through some (to him inscrutable) judicial attempt to achieve equity for other parties, he must accept a partial loaf of compensation for the full loaf of joint and several liability.
 
 
 24
 For these reasons, the judgment is AFFIRMED.
 
 
 
 *
 Senior Judge of the United States Court of Claims, sitting by designation
 
 
 [1]
 The three sections most directly relevant are:
 Section 342:
 A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
 (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
 (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
 (c) the licensees do not know or have reason to know of the condition and the risk involved.
 Section 343:
 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 (c) fails to exercise reasonable care to protect them against the danger.
 Section 343A:
 (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.
 
 
 [2]
 The vessel owner may incur liability even when the danger is open and obvious if the employee was not in a position fully to appreciate the risk or to avoid the danger even though aware of it. Gay, supra, 546 F.2d at 1241