Philip C. WILD, Jr., Plaintiff-Appellant,

v.

**LYKES BROTHERS STEAMSHIP CORPORATION, Defendant-Appellee.**

No. 80–3161
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 16, 1981.

---

**18.** Again, this assumes that a direct private cause of action does exist under § 504. See note 9 *supra* & accompanying text.

Barker, Boudreaux, Lamy, Gardner & Foley, Harold J. Lamy, New Orleans, La., for plaintiff-appellant.

Terriberry, Carroll, Yancey & Farrell, John A. Bolles, New Orleans, La., for defendant-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Plaintiff, Philip C. Wild, Jr., instituted this action pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b), to recover damages for personal injuries sustained by him while working aboard the S.S. DR. LYKES, a lash-type cargo vessel owned and operated by defendant, Lykes Brothers Steamship Corporation (Lykes). At the time of his injury, Wild was employed by Dixie Machine and Metal Works, a company engaged by Lykes to conduct extensive repairs on the S.S. DR. LYKES. Wild contends the injuries he sustained when he slipped from a ladder on the vessel, allegedly covered with a heavy layer of grease, were caused by the negligence of the shipowner Lykes. The ladder, an appurtenance of the vessel itself, consisted of four or five rungs of tubular piping devoid of non-skid properties.

Both parties concede at the time of his injury, Wild was an employee covered by the LHWCA. They do not agree, however, regarding the cause of the alleged presence of grease on the ladder, nor as to the availability of the gangway as an alternate method of reaching Wild's worksite.

The District Court granted summary judgment for Lykes, finding Dixie personnel, who had knowledge of the existence of the ladder, were in a better position than Lykes to prevent its use by providing an alternate means of commuting to and from Wild's worksite. It also concluded Dixie was responsible for the elimination of any slippery conditions that may have added to the ladder's potential hazard. In reaching these determinations, the District Court applied a negligence standard governed by concepts of a landowner's duties to his invitees as enunciated in § 343A(1) of the Restatement (Second) of Torts to interpret § 905(b) of the LHWCA. *See Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233, 1238 (5th Cir. 1977).

Wild contends the Supreme Court's recent decision in *Scindia Steam Navigation Co. v. De Los Santos*, —— U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), merits consideration in the case at bar.[1] He urges although *Scindia* held the shipowner had no general duty under § 905(b) by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that developed during ship-loading, and correspondingly, ship repair operations, this case does not fit that mold. Rather than develop after the ship repair company began its work, Wild contends the defect, *i. e.*, the tubular shaped non-skid-proof rungs of the ladder and the greasy conditions, existed before Lykes turned the ship over to Dixie, the repair company.

In *Scindia*, the Supreme Court reviewed application of land-based standards of negligence adopted by this Court, the Second Circuit, and others and those enunciated by the Ninth Circuit. *See Santos v. Scindia Steam Navigation Co.*, 598 F.2d 480 (9th Cir. 1979). The Supreme Court concluded it could not wholly agree with application of either standard. *Scindia*, —— U.S. at ——, 101 S.Ct. at 1622, 68 L.Ed.2d 1 (1981).

With respect to the Ninth Circuit standard, the Court would not agree the vessel's duty to the longshoreman requires the shipowner to inspect or supervise the stevedoring operation. *Id.* They were also unprepared to agree that the shipowner has precisely the duty described by this Court and

---

1. These contentions were raised in response to our request for supplemental briefs regarding the applicability of *Scindia*.

the Second Circuit. *Id.* at ——, 101 S.Ct. at 1624, 68 L.Ed.2d at 1.

The Supreme Court, however, recognized "there are circumstances in which the shipowner has a duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in cargo operations." *Id.* They concluded that if the shipowner knew of the defect and the stevedore was continuing to use it, the shipowner should realize the defect presents an unreasonable risk of harm to the longshoremen, and that in such circumstances, it had the duty to intervene and repair the ship's defect. *Id.* at ——, 101 S.Ct. at 1626, 68 L.Ed.2d at 1. The same would be true if the defect existed from the outset, for which the shipowner must be deemed to have been aware of its condition. *Id.*

Although the Supreme Court did not overrule application of our *Gay*, land-based, standards of negligence when analyzing LHWCA § 905(b) actions, the Court's refusal to explicitly agree with either our standard or the Ninth Circuit's standard warrants our remanding this case. Because not tried under it, we are unable to say whether the District Court would have reached the same conclusion had it analyzed the case in light of *Scindia*. Accordingly, we remand for reconsideration of the motion for summary judgment and any appropriate action resulting therefrom in light of *Scindia* and such other recent developments as may be found pertinent.

REVERSED AND REMANDED.